# Osborne v. Commonwealth.

(Decided December 4, 1931.)

JOHN M. THEOBALD for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

Appellant was indicted for the offense of child desertion denounced by section 331i-1 of the Kentucky Statutes, found guilty, and sentenced to serve two years in the penitentiary. He has appealed.

Many grounds are urged for reversal, none of which are considered or passed upon in this opinion, except the one based on appellant's contention that he was entitled to a peremptory instruction requiring the jury to find him not guilty. Inasmuch as we are of opinion that this contention should have been sustained and, as it is fatal, under the admitted facts, to the commonwealth's case, it will be unnecessary to discuss the other grounds relied upon. The statute above noted in part provides:

> "The parent of any child or children residing in this Commonwealth who shall leave, desert or abandon said child or children under the age of sixteen years, leaving said child or children in destitute or

indigent circumstances and without making proper provision for the board, clothing, education and proper care of said child or children in a manner suitable to the condition and station in life of said parent and said child or children . . . shall be guilty of a felony."

In the instant case, it was shown, and indeed admitted, that the appellant and his wife have heretofore been divorced by a judgment of the Carter circuit court. By that judgment, the custody of their infant child, now about three years old, was confided to its mother until further orders of the court, and the appellant was required to pay this mother for the support of their child the sum of $10 per month. Under this judgment of the court, the mother has had, during all of the time covered by this indictment, the custody of the child. Appellant has furnished during the past year about $50 for the support of this infant child and because he did not furnish more this indictment was found. It is his contention that the custody of the child having been confided to the mother by the judgment of the Carter circuit court, even though he failed to provide for it in a manner suitable to the condition and station in life of himself and such child, yet he did not leave, desert, or abandon said child as the statute requires to be done before he can be found guilty of the felony denounced by that statute. On the other hand, the commonwealth argues that the duty of supporting infant children is a continuing duty on the part of the parent and that if he, to quote the language of the second instruction given by the trial court in this case, fails "to provide for the child suitable to his and its station in life," he has "deserted and abandoned the child within the meaning of the Statute." There are no cases which the industry of learned counsel, or the research of this court, have found in this state directly in point, but the Michigan case of People v. Dunston, 173 Mich. 368, 138 N. W. 1047, 1049, 42 L. R. A. (N. S.) 1065, is so. It was there held that where a child has been taken away from the custody of a parent by a judgment of divorce and intrusted to the other parent, there can be no desertion or abandonment of the child by the parent deprived of the custody of the child within the meaning of a child desertion statute very similar in wording to the one before us, and the mere failure to provide for the child under such circumstances does not

constitute the felony denounced by the statute. As said by the Michigan court:

> "In the case at bar respondent had already been separated from his wife and children by the decree of a court. He was a thing apart from them. He had no right to, and could not if he wished, resume marital or family relations with them. There only existed the obligation to contribute to the wife for support of the children. . . . Conceding that at the time charged, and to which the testimony was directed, respondent neglected or refused to provide necessary and proper shelter, food, care, and clothing for his children, there is no proof that he at that time separated himself from, deserted, or abandoned them, within the meaning of the statute; but, on the contrary, he was apart from them, and his legal status was such that it was impossible for him to do so. Whatever his culpability and legal liability under other laws may be, we are constrained to hold that the facts proven by the prosecution in this case do not constitute the offense charged under the statute in question."

We regard the reasoning of the Michigan court as sound. To constitute the offense denounced by section 331i-1, there must be something more than a mere failure to provide, even though that be willful. Indeed, the mere willful failure to provide for the support of a minor child is the misdemeanor offense denounced by section 328 of the Statutes. In order to constitute the felony denounced by section 331i-1, there must accompany the failure to provide a desertion or abandonment or a leaving of the child. But where the child is taken from the parent by an order or court, as here, and instrusted to the other parent, there is no desertion or abandonment of the child by the parent from whose custody the child is taken. Were the contention of the commonwealth as embodied in the second instruction of the trial court upheld, a father who continued to live with his family, and who through shiftlessness failed to provide for them, could be indicted and convicted under this section of the Statutes, and yet it would hardly be contended that such a father had deserted or abandoned his child. The case of Ragsdale v. Commonwealth, 195 Ky. 750, 243 S. W. 1056, 1057, relied upon by the commonwealth, is not in

conflict with these views. In that case, Ragsdale was drafted into the army during the World War but was discharged in June, 1919. Up to the trial of his case in August, 1922, he had never made any provision for the support or maintenance of his child. We quote from the opinion:

> "It is said there could be no desertion or abandonment within the meaning of the statute, which was compulsory and not voluntary, and that therefore he is not shown by the evidence to have been guilty of the statutory offense; but this argument overlooks the recognized rule of law, applied in construing such statutes, that even where a parent lawfully leaves his child, and thereafter it is destitute and dependent, and he then willfully fails to support and provide for it, he is neverthless guilty of abandonment.
>
> "So that in this case, even if there was a lawful leaving of the child by the father because of the compulsory processes of the United States government and its laws, still when he returned to his home, and thereafter willfully failed to make proper provision for his child, he was guilty of abandonment within the meaning and spirit of that statute."

It will thus be seen that the court in the last analysis rested the conviction in the Ragsdale case on the failure of Ragsdale to support his child after he returned from the army, at which time there was no order of court or judgment preventing him from taking the custody of his child or any other reason why he should not have done so. Hence, when he failed under such circumstances to provide for his child, he was guilty of abandonment. The court strongly intimated in the Ragsdale case, however, that he was not guilty of any abandonment during the time he was in the army. In the instant case, there was no time when appellant could have taken the custody of his child, and although he may have been guilty of the offense denounced by section 328 of the Statutes, he was not guilty of the offense denounced by section 331i-1, since he never left, deserted, or abandoned his child; it having been taken from him by the judgment in the divorce case. Perhaps it might be argued that if the taking of the child from him by the judgment in the divorce case was due to any act or conduct on his part such as to

make him an unfit person to have the custody of the child, then there would be an abandonment by him within the meaning of the Statutes. But we need not determine that question, since there is nothing in this record to show that the taking of the custody of the infant child from the father and intrusting it to the mother was due to any other cause than that it was a child of very tender years and, under the circumstances, it was better that the mother should have its custody than the father. We are therefore of the opinion that since the admitted facts showed no desertion or abandonment or leaving of his child by the appellant within the meaning of the statute, he was entitled to the peremptory instruction he requested. For the reasons hereinbefore stated, the judgment of the lower court is reversed for a new trial consistent with this opinion.

Whole court sitting.